CONTE C. CICALA, State Bar No. 173554
*conte.cicala@clydeco.us*
MARTIN J. PLOWDEN, State Bar No. 330697
*martin.plowden@clydeco.us*
**CLYDE & CO US LLP**
150 California Street, 15th Floor
San Francisco, California 94111
Telephone: (415) 365-9800
Facsimile: (415) 365-9801

Attorneys for Plaintiff
CHUBB INSURANCE AUSTRALIA LIMITED

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHUBB INSURANCE AUSTRALIA LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>ACCELLION, INC.,<br><br>Defendant. | Case No. 5:22-cv-9078<br><br>**COMPLAINT FOR:**<br><br>**(1) BREACH OF CONTRACT;**<br>**(2) DECLARATORY JUDGMENT FOR CONTRACTUAL INDEMNIFICATION**<br>**(3) NEGLIGENCE** |

Plaintiff, Chubb Insurance Australia Limited ("Plaintiff" or "Chubb"), as subrogee and assignee of the rights of its Insured, an Australian law firm, complains against defendant Accellion, Inc. ("Accellion") and alleges the following upon information and belief:

**THE PARTIES**

1. Plaintiff, as subrogee and assignee of its Insured, is a foreign insurance company carrying Australian Company Number 001 642 020, registered in the state of New South Wales, Australia.

2. Defendant, Accellion, is a corporation organized and existing under the laws of Delaware, and maintains its principal place of business in Palo Alto, Santa Clara County, California.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000 (exclusive of interest and costs), and because there is diversity between the parties as the Plaintiff is a foreign entity domiciled in Australia, and the Defendant is a citizen of the State of California.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391 in that the Defendant resides in California.

5. This Court has personal jurisdiction over Accellion because in accordance with Clause 12.8 of the Accellion File Transfer System Agreement, the "Parties irrevocably submit to the exclusive personal jurisdiction and venue of the state and federal courts located in Santa Clara County in the State of California."

## FACTUAL ALLEGATIONS

6. At all material times, Plaintiff provided cyber insurance to its Insured, an Australian law firm, pursuant to a Cyber Enterprise Risk Management Policy, policy number 01CY548034 (the "Policy").

7. Defendant Accellion is a global technology company that provides software solutions and products to its customers.

8. On October 14, 2011, the Insured entered into the "Accellion File Transfer System Agreement" (the "Agreement") with Accellion. A redacted copy of the Agreement is attached hereto as **Exhibit A.**

9. Pursuant to the Agreement, the Insured purchased certain Accellion products and services, which were memorialized in Accellion Secure File Sharing Solutions purchase order forms (the "Order Forms"). A redacted copy of the Insured's Order Form dated October 17, 2011, is attached hereto as **Exhibit B**. In addition, a redacted copy of the Insured's Order Form dated March 14, 2014, is attached hereto as **Exhibit C.**

10. On August 10, 2020, the Insured entered into a novation agreement (the "Novation Agreement") which provided that Accellion Pte (a company incorporated under the laws of Singapore) be novated as the counterparty to the Agreement and assumed the obligations and

1  liabilities of Accellion. Accellion guaranteed performance by Accellion Pte and indemnified the law
2  firm against all liabilities arising out of a failure or delay of Accellion Pte to perform any obligations
3  under the Accellion File Transfer System Agreement. A redacted copy of the Novation Agreement
4  is attached hereto as **Exhibit D.**

5    11. On November 20, 2020, the Insured was due to migrate from Accellion's legacy File
6  Transfer Appliance ("FTA") platform known as "SafeShare", to its new flagship platform named
7  "Kiteworks". However, due to an identified bug in the Kiteworks platform, such migration from
8  SafeShare to Kiteworks was delayed and did not occur. As a result, the Insured continued to use
9  SafeShare.

10    12. On December 17, 2020, Accellion was first alerted about a security FTA
11  vulnerability when several US customers received alerts from their daily anomaly detector and
12  reported them to Accellion.

13    13. Upon information and belief, at this time, Accellion knew or should have known
14  based on the information available to it that other customers could have been at risk of the
15  vulnerability. Upon information and belief, the vulnerability allowed for remote code execution,
16  which would allow a malicious third party to leverage such vulnerability and make changes or obtain
17  unauthorized access to files uploaded to the application.

18    14. On December 20, 2020, Accellion notified certain customers about the security
19  vulnerability in its FTA for the first time when it sent out an email titled: "Critical Customer Alert:
20  Urgent FTA Security Update". Upon information and belief, recipients of this email were informed
21  that Accellion had released a security patch to address the vulnerability affecting its FTA product,
22  and that they were strongly encouraged to update their system with this security patch as soon as
23  possible. Accellion did not include the Insured as one of the recipients of this "Critical Customer
24  Alert" email dated December 20, 2020.

25    15. Upon information and belief, Accellion had removed the Insured from its e-mailing
26  list for FTA clients because the Insured had been scheduled to migrate to Kiteworks on November
27  20, 2020 (which ultimately did not happen). As a result of this removal from the e-mailing list, the
28

Insured did not receive the "Critical Customer Alert: Urgent FTA Security Update" email on December 20, 2020.

16. On December 24, 2020, Accellion sent an email notification (the "Notification") about the security patch to one system engineer at the Insured. However, the system engineer had already commenced annual leave for the Christmas/New Year office closure period, and as a result, an automatic "out-of-office" email was sent back to Accellion in response to the Notification.

17. Upon receipt of the system engineer's out-of-office email on December 24, 2020, a support ticket was logged in Accellion's system. Accellion then closed that support ticket approximately 20 minutes after it was generated, without any further action. Accellion made no further attempt to notify the Insured of the critical security patch until January 6, 2021.

18. Between December 25, 2020 and December 31, 2020, a cybercriminal (the "Threat Actor") had gained unauthorized access to the Insured's SafeShare FTA platform, and exfiltrated approximately 60,000 unique confidential documents from the Insured's FTA platform.

19. On January 6, 2021, Accellion sent a follow-up email to multiple contacts at the Insured to confirm receipt of the Notification. Upon receiving the Notification, the Insured took immediate action to install the security patch, which was completed within six hours.

20. On January 12, 2021, the Insured discovered that its SafeShare FTA platform had been subject to unauthorized access by a Threat Actor.

21. On January 13, 2021, the Insured attended a conference with Accellion. During this conference, a representative of Accellion stated that the Insured did not receive the Notification due to an error on Accellion's system relating to the upcoming upgrade to Kiteworks.

22. On January 19, 2021, the Insured received an email from the Threat Actor taking responsibility for the unauthorized access to the Insured's SafeShare FTA platform.

23. In an attempt to protect the Insured's data stored on the SafeShare FTA platform and prevent any risk of disclosure of this data, the Insured engaged third-party experts to communicate with the Threat Actor to prevent the publication and disclosure. The Threat Actor issued a ransom demand of USD $20 million in exchange for deletion of the confidential data that had been exfiltrated from SafeShare.

7290668                                             4                              Case No. 5:22-cv-9078
COMPLAINT FOR: (1) BREACH OF CONTRACT; (2) DECLARATORY JUDGMENT
FOR CONTRACTUAL INDEMNIFICATION; (3) NEGLIGENCE

24. On January 21, 2021, the Threat Actor provided a video that identified the data that it had exfiltrated from the Insured's FTA platform which the Insured confirmed was its data.

25. Left with no choice but to pay the Threat Actor, on February 4, 2021, the Insured and/or the Plaintiff, pursuant to the terms and conditions of the Policy, paid the ransom to the Threat Actor in the amount of USD $3,000,000 (which converted to AUD $3,957,783.64) (the "Ransom Payment").

26. On February 8, 2021, the Threat Actor provided Mega.nz credentials for the Insured to access and download the exfiltrated data set.

27. On February 9, 2021, the Insured successfully downloaded all of the files from the Mega.nz platform and identified a video from the Threat Actor demonstrating that its copy of the files had been deleted. The Threat Actor also provided written acknowledgement that it had deleted all copies of the data, that it did not have any other copies of the data, and that it had not provided the data to any other third parties.

28. Had Accellion properly notified the Insured about vulnerability and the need to update the FTA with the critical security patch, the Insured would have immediately installed the critical security patch. This would have prevented the Threat Actor from exfiltrating the Insured's data, and would have meant the Insured, and its insurer, could have avoided paying the ransom payment and related costs and expenses.

29. Following the USD $3,000,000 (AUD $3,957,783.64) Ransom Payment, the Insured undertook an extensive review of the compromised documents to ensure it complied with its obligations under privacy laws domestically and internationally, given the nature of the compromised documents. The Insured incurred significant attorney costs to undertake such a review.

30. The Insured also incurred significant costs to remediate the Threat Actor data exfiltration incident through its use of third-party vendors. It is estimated that the Insured has incurred in excess of AUD $2,870,059.31 in order to deal with and remediate the incident, including professional fees, exchange fees, and other third party costs.

31. Pursuant to the terms of the subject policy, and otherwise by operation of law, Plaintiff is contractually, legally and equitably subrogated to its Insured's rights against Accellion to recover for the amounts paid as a result of the loss, as well as to pursue any uninsured losses suffered by the Insured by virtue of an assignment of such claims, if any.

## CLAIMS FOR RELIEF

## COUNT I

## BREACH OF CONTRACT

32. Plaintiff realleges each and every allegation contained in the preceding paragraphs.

33. On October 14, 2011, the Insured and Defendant entered into the Agreement, attached hereto as **Exhibit A**.

34. Under the Confidentiality Provision in Clause 5.1 of the Agreement "Confidential Information", Accellion had a contractual obligation to "take measures to prevent the disclosure and unauthorized use of Confidential Information."

35. Defendant breached this contractual obligation by failing to ensure that the Insured was provided with the security patch that would have rectified the vulnerability in SafeShare and therefore would have prevented the Threat Actor from gaining unauthorized access and use of confidential data contained on the Insured's SafeShare FTA platform.

36. Moreover, the Insured purchased the "Maintenance Support Services" described at Clause 9 of the Agreement. These "Maintenance Support Services" are also described at Clause 3 of the Order Forms, attached hereto as **Exhibit B** and **Exhibit C**. The purchase of such services meant that Accellion was also contractually obliged under Clause 10 of the Agreement to "make available" to the Insured customer all "Updates to the supported Accellion Software that Accellion makes generally available to its other customers."

37. Defendant breached this contractual obligation by failing to include the Insured on the "Critical Customer Alert: Urgent FTA Security Update" email which Defendant sent to certain other customers on December 20, 2020 in order to notify them about the security patch update. Defendant's failure to ensure that the Insured was made aware of the FTA vulnerability and security patch update until January 6, 2021, until after the Threat Actor had already gained unauthorized

access, constituted a breach of its obligation to make all software updates available to the Insured, which in turn directly led to the unauthorized access and use of the Insured's SafeShare platform by the Threat Actor and subsequent data exfiltration.

38. Additionally, pursuant to Clause 6.3 of the Agreement, Defendant warranted that "all services provided by Accellion hereunder will be of a professional quality and will conform to generally accepted industry standards."

39. Defendant breached this contractual obligation by failing to provide a professional quality standard of maintenance support services to the Insured. For example, Defendant failed to include the Insured on the "Critical Customer Alert: Urgent FTA Security Update" email dated December 20, 2020. Defendant did not attempt to notify the Insured of the FTA vulnerability and security patch until December 24, 2020, even though it had reason to believe a vulnerability existed as early as December 17, 2020. Furthermore, after receiving the Insured's "out-of-office" reply on December 24, 2020, Defendant chose to ignore that reply and closed the support ticket that was generated by the out-of-office reply. Defendant took no further action to ensure the Insured was informed of the vulnerability and security patch update until January 6, 2021, several days after the Threat Actor had already gained unauthorized access to the Insured's SafeShare platform and exfiltrated confidential client data. All these actions and inactions by the Defendant fell short of the professional quality of service warranted in Clause 6.3 of the Agreement.

40. As a result of Defendant's breaches of contract, the Insured was not provided with the critical security patch update to protect its SafeShare platform, which resulted in a Threat Actor exfiltrating confidential data from the SafeShare platform. This cybercrime incident resulted in the Insured having to pay a ransom payment of AUD $3,957,783.64 (USD $3,000,000) to the Threat Actor in order to prevent the Threat Actor from disclosing the confidential exfiltrated data. It also resulted in the Insured incurring substantial costs in excess of AUD $2,870,059.31 in order to deal with and remediate the incident, including professional fees, exchange fees, and other third party costs.

41. Defendant's breaches of contract were the direct, legal, proximate and current cause of the damages suffered by Plaintiff and its insured.

42. Based on Defendant's breaches of the contract provisions discussed above, Plaintiff suffered damages by way of payments made under the Policy in the amount of approximately AUD $6,827,842.95, according to proof at trial.

## COUNT II

## DECLARATORY JUDGMENT FOR CONTRACTUAL INDEMNIFICATION

43. Plaintiff realleges each and every allegation contained in the preceding paragraphs.

44. Plaintiff's insured and Defendant entered into the Novation Agreement, attached hereto as **Exhibit D**.

45. The Novation Agreement provided, in relevant part, that the Defendant, Accellion agreed to guarantee performance by Accellion Pte and to indemnify the Insured against all liabilities arising out of a failure or delay of Accellion Pte to perform any obligations under the Accellion File Transfer System Agreement.

46. In accordance with the Novation Agreement's indemnity provision, Plaintiff's insured seeks a declaratory judgment for contractual indemnification from the Defendant for any third-party claims brought by the Insured's customers alleging loss arising from Accellion's breach of contract.

## COUNT III

## NEGLIGENCE

47. Plaintiff realleges each and every allegation contained in the preceding paragraphs.

48. The Defendant owed the Insured a duty of care to ensure that its services were provided with reasonable care and skill. Indeed, the terms of the Agreement stipulated that "all services provided by Accellion under the Agreement will be of a professional quality and will conform to generally accepted industry standards."

49. However, Defendant fell below this standard of care both in general and in the following particulars:

    a. failing to give prompt and timely notification to its customers, including the Insured, about the critical security vulnerabilities that the Defendant discovered on December 17, 2020;

b.      failing to include the Insured on the "Critical Customer Alert: Urgent FTA Security Update" email which Defendant sent to certain other customers on December 20, 2020;

c.      failing to inform more than one single employee at the Insured about the vulnerability and security patch on December 24, 2020;

d.      failing to take further action to ensure that the Insured was made aware of the FTA vulnerability and security patch after receiving an "out-of-office" email from that one single employee at the Insured on December 24, 2020, instead of simply closing the support ticket that was generated by the out-of-office reply;

e.      failing to ensure that the Insured was made aware of the FTA vulnerability and security patch until January 6, 2021, which was several days after Threat Actor had already gained unauthorized access to the Insured's SafeShare platform and exfiltrated confidential client data;

f.      failing to take any other reasonable preventative measures that would have sufficiently avoided the damage;

g.      otherwise failing to provide a professional quality standard of service under the circumstances; and

h.      other acts of negligence as may be revealed in the course of discovery.

50.     As a direct and proximate result of the aforesaid negligence, gross negligence, carelessness, recklessness and/or negligent acts and/or omissions of Defendant, its agents, servants and/or employees, the Insured was not provided with the critical security patch update which would have prevented the Threat Actor from accessing and exfiltrating confidential data from the SafeShare platform, resulting in damages totaling approximately AUD $6,827,842.95 (converted to USD $4,639,519.28), according to proof at trial.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays for relief as follows:

1.      Judgment to be entered in favor of Plaintiff and against Defendant according to proof, in an amount in excess of $4,639,519.28;

2. Award Plaintiff its costs and attorneys' fees, along with pre- and post-judgment interest;

3. Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

Dated: December 22, 2022                    CLYDE & CO US LLP

By: /s/ *Conte C. Cicala*
Conte C. Cicala
Martin J. Plowden
Attorneys for Plaintiff
CHUBB INSURANCE AUSTRALIA LIMITED